UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DARLENE A. CHAPDELAINE<br><br>Plaintiff,<br><br>v.<br><br>TOWN OF EASTFORD, ET AL.<br><br>Defendants. | No. 3:15-CV-01222-MPS |

### RULING AND ORDER DISMISSING CASE WITH PREJUDICE

Plaintiff Darlene Chapdelaine, proceeding *pro* se, brings her fifth amended complaint in this action against the Town of Eastford, Connecticut (the "Town"), the Town Inland Wetlands Watercourse Commission ("IWWC"), and 32 individuals (together, "Defendants"). According to Chapdelaine, she lived at 211 Eastford Road in Eastford, Connecticut from fall 2010 until December 2014. (Fifth Am. Compl., ECF No. 91 ¶ 30.) She alleges that the IWWC discriminated against her in 2011 by denying her request to conduct agricultural activities – and that this denial ultimately led to her eviction. (*Id.*) She also alleges that Defendants have harassed her and invaded her privacy. (*Id.*) In her 92-page complaint, Chapdelaine brings 23 counts, each against all 34 Defendants and each pursuant to 42 U.S.C. § 1983 ("Section 1983"). (*Id.*) For the reasons set forth below, the complaint is hereby DISMISSED with prejudice as to all counts and all Defendants.

**I.      Procedural Background**

On October 24, 2014, Chapdelaine initiated a nearly identical case against many of the Defendants, which this Court dismissed on May 20, 2015, for failure to state a claim on which

1

relief can be granted. (Ruling on Pending Motions, *Chapdelaine v. Duncan et al.*, 14-cv-1581-MPS, ECF No. 12 ("First Dismissal").) However, the Court granted Chapdelaine leave to replead her claims "provided that she plead, consistent with Rule 11 of the Federal Rules of Civil Procedure, specific facts showing that there are plausible, timely causes of action as to any defendants except the judicial defendants, who are plainly immune from this lawsuit." *Id.*

Rather than replead, Chapdelaine filed this action on August 14, 2015. (ECF No. 1.) She filed a first amended complaint on September 3, 2015 (ECF No. 10) and a second amended complaint on September 16, 2015. (ECF No. 13.) On October 20, 2015, this Court again dismissed Chapdelaine's complaint for failure to comply with Fed. R. Civ. P. 8 and this Court's earlier ruling, granting her leave to file yet another amended complaint within 21 days. (ECF No. 23.) Chapdelaine filed a third amended complaint on November 5, 2015 (ECF No. 25), a fourth amended complaint on November 9, 2015 (ECF No. 28), and the present, fifth amended complaint, which the Court granted her leave to file on February 22, 2016. (ECF Nos. 90-91.) Chapdelaine has also filed multiple, repetitive documents in the case, leading the Court to revoke her electronic filing privileges. (ECF No. 90.)

In response to the fifth amended complaint, many of the defendants have filed motions to dismiss for failure to state a claim on which relief may be granted under Fed. R. Civ. P. 12(b)(6), insufficient process under Fed. R. Civ. P. 12(b)(5), and failure to meet the pleading requirements of Fed. R. Civ. P. 8 despite multiple opportunities to amend provided by the court. (ECF Nos. 98-105, 108, 110, 113-14, 116-17, 120-24.)

## II.    Defendants and Claims

There are 34 defendants listed under "Parties" in the fifth amended complaint. (ECF No. 91 at 3.) Those defendants are not identical to the defendants listed at the end of the complaint in

a "List of Parties" (*Id.* at 92), and also differ from the parties listed in earlier iterations of the complaint in this case. (ECF Nos. 1, 10, 13, 23, 25.) Some of the defendants[1] allege that they were never properly served by Chapdelaine, and some have never appeared.[2] Chapdelaine's own Acknowledgement of Service Executed at most attests to serving of 21 of the 34 defendants. (ECF No. 38.) The defendants listed at the beginning of the complaint are:

- The Town of Eastford, CT ("Town")

- The Town of Eastford Inland Wetlands Watercourse Commission ("IWWC")

- Current and past members of the IWWC: Georgianne Copley, Denis Day, Marcia Day, Thomas DeJohn, Claudia Hixson, Deborah Lee, and Robert Torcellini - also a selectman ("IWWC member defendants")

- Current and past members of the Eastford Board of Selectmen: Arthur Brodeur, Alan Platt, Robert Torcellini - also an IWWC member, Brenda Willis ("Board of Selectmen defendants")

- Kenneth Andersen, Daniel Belanger, Rhonda Belanger, Mark Branse, Christopher Bowen, Karen Butts, Mary Duncan, Adrian Genovesio, Raymond Green, John Revill, Deborah Torcellini, Julia Torcellini, Paul Torcellini, Cecelia Vaida, Paul Vaida, Gary Warren, Amy Whitehouse, Christopher Whitehouse, Craig Whitehouse, Raymond Whitehouse, Rebecca Whitehouse, and Robert Willis ("private defendants")

Chapdelaine brings 23 counts against all of the above defendants, all invoking Section 1983:

1. Retaliation for Petitioning
2. Free Speech
3. Unlawful Search
4. Conspiracy
5. Refusing or Neglecting to Prevent
6. Violation of the Connecticut Constitution Article First Sections 1, 4, 7, 9, 10 & 11
7. Abuse of Process
8. Conspiracy to Abuse Legal Process

---

[1] Christopher Bowen (ECF No. 67, 101); Mark Branse (ECF No. 108); John Revill (ECF No. 102); Claudia Hixson (ECF No. 98); Deborah Lee (ECF No. 116); and the Town, Thomas DeJohn, Robert Torcellini, and Arthur Brodeur (ECF No. 110).

[2] The docket in this case shows no appearances for Kenneth Andersen, Karen Butts, Raymond Green, Deborah Torcellini, Julia Torcellini, Paul Torcellini, Paul Vaida, Gary Warren, Raymond Whitehouse, and Rebecca Whitehouse.

3

9. Intentional Infliction of Emotional Distress
10. Vexatious Litigation and Vexatious Suit
11. Interference with Intimate Association / Alienation of Community
12. Breach of Contract; Equitable Estoppel; Estoppel By Representation; Unjust Enrichment
13. Equal Rights Under the Law
14. Class of One Treatment
15. Substantive Due Process Violation
16. Taking of Land
17. Invasion of Privacy
18. Discrimination
19. Freedom of Information
20. False Light
21. Acting Outside the Scope of Authority
22. Harassment
23. Acting Outside the Scope of Authority and No Evidence of Violation to Support a Cease and Desist Order, and No Cease and Desist Order Issued to Chapdelaine

### III.    Factual Allegations

Chapdelaine alleges that in 2010, along with her domestic partner at the time, Defendant Gary Warren, she acquired the 211 Eastford Road property from Defendants Mary Duncan and John Revill under a Bond for Deed Real Estate Agreement. (ECF No. 91 ¶ 30.) Duncan, Revill, Warren, and Chapdelaine agreed on a selling price of $250,000. (*Id.* ¶ 37.) The sellers provided a Residential Property Disclosure Report that did not disclose any water or wetlands issues. (*Id.* ¶ 38.) On September 10, 2010, Chapdelaine and Warren received notice that they were prequalified for a 30-year mortgage, and the initial closing was held on October 4, 2010. (*Id.* ¶¶ 36, 40.) On October 12, 2010 Warren and Chapdelaine obtained a building permit to construct a barn expansion on the property. (*Id.* ¶ 41.)

On about November 12, 2010 the Town of Eastford issued an order to cease and desist regulated activities at 211 Eastford Road, which Chapdelaine claims she never received. (*Id.* ¶ 70.) On November 29, 2010, Chapdelaine applied to the IWWC for a "jurisdictional ruling," and on December 16, 2010, the IWWC held a meeting to hear agricultural applications from both Chapdelaine and another town resident, Robert Torcellini. (*Id.* ¶¶ 44, 50.) The IWWC approved

4

Robert Torcellini's application, but tabled Chapdelaine's until January 27, 2011. (*Id.* ¶ 51, 57.) Following the January 27, 2011 hearing, the IWWC approved some of Chapdelaine's requests to conduct agricultural activities, but denied others. (*Id.* ¶ 69.)

Chapdelaine alleges that IWWC's denial of her requests was procedurally deficient and discriminatory. She claims that she was not allowed to speak or present additional documents at her IWWC hearing on January 27, 2011. (*Id.* ¶ 63.) She also claims that she was treated differently by the IWWC – first, compared with other town members who applied for agricultural exemptions (*Id.* ¶¶ 50-52, 122, 138, 150-54, 157-58, 162, 165-66, 171, 174-75), and second, compared with other town members who did agricultural work and were not subject to enforcement actions. (*Id.* ¶¶ 86, 135.) Chapdelaine states that this differential treatment, "was in retaliation for the plaintiff planning to operate and establish businesses that were and are in direct competition with many of the commission members, their families, their neighbors, and known associates." (*Id.* ¶ 72.)

Following the IWWC denial in January 2011, Chapdelaine became involved in numerous legal disputes with various defendants, including an unsuccessful challenge of the IWWC's decision, an unsuccessful motion for temporary restraining order against many of the defendants, and ultimately her eviction from 211 Eastford Road. *See* Section IV *infra*.

Chapdelaine also alleges that Defendants commenced a campaign of harassment against her. She claims that many defendants posted signs on their property reading "I support Mary Duncan," or "isupportmaryduncan.com," directing viewers to a website created by Defendants Adrian Genovesio and Christopher Whitehouse. (*Id.* ¶¶ 116, 123, 127-28, 130, 135, 141). She also cites specific incidents of harassment, alleging that three of her employees lost their permission to ride the town school bus (*Id.* ¶¶ 74, 77, 144), that Defendant Marcia Day "verbally

assaulted" her in the library (*Id.* ¶ 129), and that Defendant Christopher Whitehouse followed her very closely on the road in a threatening way. (*Id.* ¶ 130.)  Chapdelaine claims that anonymous 9-11 calls were placed about her (*Id.* ¶¶ 168-69, 187), that she received an anonymous letter addressed to "D. Crap in the Lane" (*Id.* ¶ 142), and that unknown individuals posted flyers about her lawsuits stating, among other things, "a judge estimates this person has cost YOU and ME between $60-$120 each already." (*Id.* ¶ 155.)

Chapdelaine further claims that various defendants invaded her privacy. She alleges that Defendants Daniel and Rhonda Belanger pointed video cameras at her house (*Id.* ¶ 125), Defendant Thomas DeJohn conducted tours on nearby town property that directed members of the public to look towards a mill located on 211 Eastford Road (*Id.* ¶¶ 82, 164), and Defendant Denis Day entered her property with two police troopers to question her about her dogs being licensed (*Id.* ¶ 62). In the course of the litigation detailed below, she also claims that multiple state and local inspections took place on her property. (*Id.* ¶¶ 62, 80, 83, 95.)

As a result of the IWWC denial, the harassment, and the surrounding litigation, Chapdelaine claims to have suffered severe emotional distress. (*Id.* ¶ 117.) She also claims that the value of her property dropped, and that she was unable to obtain financing, ultimately resulting in her eviction. Chapdelaine further attributes alleged domestic abuse by her former partner, Defendant Gary Warren, and the death of a beloved horse to the actions of the defendants. (*Id.* ¶¶ 108, 117.)

## IV. Prior Litigation

The Court takes judicial notice of prior litigation between Chapdelaine and various defendants. The legal disputes are numerous, and most relevant for this court's purposes are the

following.³ First, in 2011, Chapdelaine filed a declaratory judgment action to challenge the IWWC's decision, which was consolidated with a civil enforcement lawsuit brought by the Town on June 13, 2011. The two cases were heard together over eight days of trial in the Hartford Superior Court Land Use Litigation Docket. The trial court upheld the IWWC's decision, and the appellate court affirmed. *Yorgensen v. Chapdelaine*, No. HHDCV115036225S, 2013 WL 811908 (Conn. Super. Ct. Jan. 24, 2013), *aff'd*, 150 Conn. App. 1 (2014). The court found that the "testimony in this case is quite clear that Chapdelaine and Warren performed a regulated activity … without obtaining a permit as required." *Id.* at *8. "Notwithstanding whether or when Chapdelaine and Warren received notice of the cease and desist order, there is no question that they knew the Commission sought additional information and could not, at that time, issue the requested jurisdictional ruling without such information. There is also no question that they attended the December and January Commission meetings, knew of the request for additional information, did not comply with the request and, in fact, continued working." *Id.*

Second, after being denied a request to inspect town records, Chapdelaine filed a Freedom of Information complaint, which she won on February 11, 2014. (ECF No. 91 ¶¶ 109, 112, 120.) *See Chapdelaine*, FIC 2013-398 (Feb. 11, 2014) *available at* http://www.ct.gov/foi/cwp/view.asp?a=4162&Q=539930.

Third, in April 2014, Chapdelaine brought a complaint and motion for temporary restraining order against 23 of the 34 Defendants named in the present case, raising nearly identical claims of harassment and seeking damages and injunctive relief for intentional infliction of emotional distress, libel and slander, invasion of privacy, and failure to utilize police

---

³ *See also Chapdelaine v. Duncan*, No. CV145005837, 2014 WL 6996296, at *1-3 (Conn. Super. Ct. Oct. 28, 2014), for a summary of lawsuits involving Chapdelaine through October 2014.

power to protect her. *Chapdelaine v. Duncan*, No. CV145005837, 2014 WL 6996296 (Conn. Super. Ct. Oct. 28, 2014). After three days of hearings, the court issued a detailed decision dismissing Chapdelaine's TRO application as to all Defendants on October 28, 2014. *Id.* On January 5, 2015, the court entered a judgment of nonsuit against Chapdelaine. *Id.*

Fourth, Duncan and Revill have pursued Chapdelaine's eviction in a summary process action. On August 22, 2014, after a two-day trial, the superior court entered judgment against Chapdelaine. *Duncan et al v. Chapdelaine et al*, No. CV 11-18453 (Conn. Super. Ct. Aug. 22, 2014). In September and December 2014, Chapdelaine unsuccessfully attempted to remove the case to federal court. *Duncan et al v. Chapdelaine et al*, No. 3:14-cv-01265-JCH; *Duncan et al v. Chapdelaine et al*, No. 3:14-cv-01812-MPS.

V.     **Legal Standard**

"A district court has inherent authority to dismiss meritless claims sua sponte, even when a plaintiff has paid his filing fee." *Webster v. Penzetta*, 458 F. App'x 23, 25 (2d Cir. 2012) (affirming the district court's dismissal of complaint even before all defendants had filed responsive pleadings). In light of the multiple opportunities Chapdelaine has received to plead plausible claims, and her continued failure to do so, the Court now exercises this authority.

In evaluating whether a plaintiff has stated a claim for relief under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and draw all reasonable inferences" in plaintiff's favor. *Cruz v. Gomez*, 202 F.3d 593, 596 (2d Cir. 2000). When a plaintiff submits a complaint *pro se*, the court must construe the allegations liberally, raising "the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Even a *pro se* plaintiff, however, must meet the standard of facial plausibility. *See Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) ("[A] *pro se* complaint must state a plausible claim for relief.") (citing *Harris v.*

*Mills*, 572, F.3d 66, 73 (2d Cir. 2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (citing *Twombly*, 550 U.S. at 554-55). The court may allow the case to proceed only if the complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Id.*

## VI.  Discussion

### A. Failure to State Any Claim Against Certain Defendants

Although Chapdelaine brings each count against "all defendants," she has not raised any discernable claim against certain of the defendants she lists. Chapdelaine names Defendants Karen Butts, Raymond Green, Deborah Torcellini, Cecelia Vaida, Paul Vaida, and Robert Willis in her list of parties, but does not go on to make any factual allegations concerning them other than (at most) their residence in Eastford and relationship with other defendants. (ECF No. 91 at 4.) Regarding Defendants Paul and Julia Torcellini, she alleges that they were her neighbors and were treated more favorably by the IWWC in their agricultural applications. (*Id.* ¶¶ 116, 122, 138, 152-53, 157, 165.) As for Defendants Mark Branse and Christopher Bowen, Chapdelaine's primary allegation seems to be that they were attorneys for other Defendants. (*Id.* ¶¶ 45, 47, 111.)  She also alleges that Bowen insufficiently served process, and that Branse and Bowen "misrepresented facts" to the state court, but no particular misrepresentations are specified. (*Id.* ¶¶ 170, 255, 276.) Because all of these allegations fail to state a claim upon which relief can be granted, the case against Christopher Bowen, Mark Brance, Karen Butts, Raymond Green, Deborah Torcellini, Julia Torcellini, Paul Torcellini, Cecelia Vaida, Paul Vaida, and Robert Willis is dismissed.

Finally, this Court has previously ruled that the IWWC is not an independent legal entity that is capable of being sued. (First Dismissal at 15-16.) Any and all claims against the IWWC are therefore dismissed.  The Court will now proceed to discuss the claims against the remaining defendants: the Town, the IWWC member defendants, the Board of Selectmen defendants, and individual defendants Kenneth Andersen, Daniel Belanger, Rhonda Belanger, Mary Duncan, Adrian Genovesio, John Revill, Gary Warren, Amy Whitehouse, Christopher Whitehouse, Craig Whitehouse, and Rebecca Whitehouse.

**B. Claims Dismissed from Previous Complaint (Counts 2, 4-5, 13-16, 18, 21, and 23)**

*i. Challenges to 2011 Enforcement Actions*

Chapdelaine brings a number of Section 1983 claims that arise out of related events in 2010 and 2011: the IWWC's cease and desist order, the denial of some parts of her application for agricultural activities, and the civil enforcement action brought against her. Chapdelaine alleges equal protection violations: denial of equal protection (Count 13), "class of one" treatment (Count 14), and discrimination (Count 18). She also alleges due process violations (Count 15) and challenges the validity of the cease and desist order (Counts 21 and 23).

As this Court previously held, these claims (whether against the Town, the First Selectmen defendants, or the IWWC member defendants) are time-barred. (First Dismissal at 10-11.) "When a § 1983 action is filed in the District of Connecticut, it is subject to a three-year statute of limitations." *Walker v. Jastremski,* 159 F.3d 117, 119 (2d Cir.1998). "Under federal law, a cause of action generally accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action." *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221 (2d Cir. 2003) (internal citations and quotation marks omitted). Chapdelaine filed the Complaint more than three years after the alleged unconstitutional conduct. She does plead any new facts

10

suggesting that the claims are not time-barred or otherwise sufficiently allege facts indicating any basis for tolling. *See Pino v. Ryan*, 49 F.3d 51, 54 (2d Cir. 1995).

        *ii.*      *Taking of Property, Free Speech, Conspiracy*, *Refusing or Neglecting to Prevent*

Chapdelaine brings a number of other claims that were earlier addressed and dismissed by this Court. She claims that Defendants took her property without just compensation in violation of the Fifth Amendment (Count 16). She brings a First Amendment Free Speech claim (Count 2), alleging that she was "held hostage to the speech of others through Billboards, yard signs, posters and the creation of the internet based website known as 'isupportmaryduncan.com.'" (*Id.* ¶ 218.)  And she claims that Defendants conspired to violate her rights and refused or neglected to prevent the violation of her rights (Counts 4-5).  The new version of these claims contains no facts that suggest they are any more plausible than the previous version. Thus, all of these claims are dismissed for the same reasons set out in this Court's earlier Ruling. (First Dismissal at 16-23.)

    **C. Freedom of Information Claim (Count 19)**

Chapdelaine brings a claim of "Freedom of Information (Brought Pursuant to 42 U.S.C. § 1983) Against All Defendants" (Count 19). Chapdelaine states that she was deprived access to records, that she filed Connecticut freedom of information complaints, and that hearing officers found in her favor. (*Id.* ¶¶ 66, 109.) The allegation that Chapdelaine won a freedom of information hearing conducted under state law does not state a cognizable federal claim and this claim is dismissed.

    **D. New Section 1983 Claims (Counts 1, 3, 11, and 17)**

Chapdelaine also brings claims under Section 1983 arising out of numerous incidents of harassment and invasion of privacy by Defendants (*see* Section III, *supra*). She brings claims of

Retaliation for petitioning (Count 1), Unlawful Search (Count 3), Interference with Intimate Association / Alienation of Community (Count 11), and Invasion of Privacy (Count 17). Construed liberally, these could all be claims of deprivation of constitutional rights and could be different from similar claims made in the earlier dismissed complaint.

"To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state . . . law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (internal quotation marks and citations omitted). With regard to the individual defendants (including members of the IWWC and First Selectmen acting in their private capacities), most of Chapdelaine's allegations fail to state any facts showing that any of the defendants under color of state law when they engaged in the conduct complained of. "[A] private actor acts under color of state law when the private actor is a willful participant in joint activity with the State or its agents." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (citations and internal quotation marks omitted). Chapdelaine fails to plead facts that would satisfy this standard. Chapdelaine also fails to allege a conspiracy under Section 1983 because she fails to allege facts showing "(1) an agreement . . . between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello,* 292 F.3d at 324. Chapdelaine's allegations against individual defendants such as placing "I Support Mary Duncan" signs on their property, pointing video cameras at her house, driving closely behind her, yelling at her, and sending letters do not state a claim of state action or acting under color of state law, but rather describe private actions.

A handful of Chapdelaine's allegations arguably claim some form of state action but are insufficient to state a claim for other reasons. First, Chapdelaine alleges that "Mr. Christopher Whitehouse's daughter Amy Whitehouse is on the Board of Education for the Town of Eastford and it is the belief of the plaintiff that Ms. Whitehouse played an instrumental role in having Children removed from the bus route to the residence and farm of the plaintiff's." (*Id.* ¶ 144). This conclusory statement, without more, is insufficient to state a cause of action. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). It also appears that this claim is time-barred because the removal of the individuals from the bus allegedly occurred in 2011. (ECF No. 91 at ¶¶ 74, 77.) Second, Chapdelaine alleges that Defendant Denis Day entered her property with two police troopers to question her about her dogs being licensed and that in the course of litigation, multiple state and local inspections took place on her property. (*Id.* ¶¶ 62, 80, 83, 95.) However, she makes no specific allegations to suggest that these entries on her property were in any way unlawful or a violation of her constitutional rights, or, in the case of the alleged inspections by state agencies, any specific factual allegations tying those inspections to acts of the defendants taken under color of state law. (*Id.* ¶ 95.)

Finally, regarding the Town, Chapdelaine has failed to allege facts that suggest that a Town custom or policy caused violations of her federally-protected rights. Municipalities may be sued under Section 1983 "where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Chapdelaine's complaint lacks "factual allegations demonstrating the existence of an officially-adopted policy or custom that caused [Plaintiff]

13

injury and a direct and deliberate causal connection between that policy or custom and the violation of [Plaintiff's] federally protected rights." *Joe v. Moe*, No. 10 CIV. 4417 RJS, 2011 WL 2416882, at *5 (S.D.N.Y. June 1, 2011) (internal citations and quotation marks omitted).

### E. State Law Claims (Counts 6-10, 12, 20, and 22)

As it did in its First Dismissal, the Court declines to exercise supplemental jurisdiction over Chapdelaine's remaining state law claims.[4] "Supplemental or pendent jurisdiction is a matter of discretion, not of right. Thus, the court need not exercise supplemental jurisdiction in every case." *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 165-66 (D. Conn. 2005). *See also United Mine Workers v. Gibbs,* 383 U.S. 715, 715–26 (1966). The Court declines to exercise jurisdiction over state law claims including Connecticut Constitutional claims (Count 6), breach of contract, equitable estoppel, estoppel by representation, and unjust enrichment (Count 12), abuse of process and vexatious litigation (Counts 7, 8, and 10), intentional infliction of emotional distress (Count 9), false light (Count 20), harassment (Count 22), and any other state law claims.

Moreover, even if the Court were to exercise supplemental jurisdiction over the state law claims, many if not all of the claims have already been decided in prior state court litigation (*see* Section IV, *supra*), are time-barred, or otherwise fail to state any claim upon which relief can be granted.

---

[4] Although Chapdelaine brings all claims "pursuant to 18 U.S.C. § 1983," a claim under Section 1983 must be based on an alleged violation of a *federal* constitutional or statutory right. *See Gomez v. Toledo,* 446 U.S. 635, 640 (1980). Chapdelaine's state law claims cannot form the basis of a claim under Section 1983. And while "section 1983 liability may be predicated on a claim for malicious prosecution, it may not be predicated on a claim for malicious abuse of process." *Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992) (internal citations omitted).

**VII.    Conclusion**

For the foregoing reasons, the complaint is DISMISSED with prejudice as to all claims and all defendants. All pending motions (ECF Nos. 30, 42, 65, 68, 74, 82, 89, 98, 100, 102, 104, 108, 110, 113, 116, 120, 122, 123, 124, 126, 127, 143) are DENIED as moot. The Clerk is directed to close the case.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
            September 6, 2016